UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DONALD DAWKINS,

                        Plaintiff,

   v.

BIONDI EDUCATION CENTER, LEAKE &
WATTS SERVICES, ALLAN MUCATEL,
ALPHONSO GRIMES, DONALD
ANTONECCHIA, GEORGE CANCRO,
JILL ST. JOHN, and RALPH CAUSWELL,

                        Defendants.

No. 13-CV-2366 (KMK)

OPINION AND ORDER

Appearances:

Donald Dawkins
Middletown, NY
*Pro Se Plaintiff*

Isaac J. Burker, Esq.
Susan M. Corcoran, Esq.
Tarek M. Maheran, Esq.
Jackson Lewis P.C.
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Donald Dawkins ("Plaintiff") filed the instant Fifth Amended Complaint pursuant to 42 U.S.C. §1983 against Biondi Education Center ("Biondi" or "the school"), Leake & Watts Services ("Leake & Watts"), and their employees, Allan Mucatel ("Mucatel"), Alphonso Grimes ("Grimes"), Donald Antonecchia ("Antonecchia"), George Cancro ("Cancro"), Jill St. John ("St. John"), and Ralph Causwell ("Causwell") (collectively, "Defendants"), alleging violations of his rights under the First, Fifth, and Fourteenth Amendments of the

Constitution.  (*See generally* Pl.'s Fifth Amended Compl. ("Compl.") (Dkt. No. 49).)  Plaintiff further alleges unlawful discrimination by Defendants, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI").  (*See generally* Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") (Dkt. No. 60).)  Before the Court is Defendants' Motion To Dismiss Plaintiff's Fifth Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 54.)  For the reasons explained herein, Defendants' Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Fifth Amended Complaint and the documents attached to his opposition papers, which the Court takes as true for the purpose of resolving the instant Motion.[1]

Plaintiff is a former employee of Leake & Watts, having held a non-teaching position at Biondi between 2001 and 2012.  (*See* Compl. at unnumbered 3, 12; Pl.'s Opp'n Ex. D ("Aff. of James Faulkner, Jr.") at unnumbered 1.)  "[C]ontrolled and owned by Leake [&] Watts," Biondi is "a public high school with private status" that provides educational services to students with special needs.  (Compl. at unnumbered 10, 15.)  "[T]hese types of private schools" are "heavily regulated and closely supervised by the State," (*id.* at unnumbered 3, 7), which "almost entirely" funds the school's budget, (*id.* at unnumbered 5).  For these reasons, Plaintiff contends that

---

[1] Though courts are "typically confined to the allegations contained within the four corners of the complaint," it is appropriate to "consider factual allegations contained in a pro se litigant's opposition papers and other court filings" in "analyzing the sufficiency of a pro se pleading." *Rodriguez v. Rodriguez*, No. 10-CV-891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) (citations and internal quotation marks omitted).  Therefore, in deciding the instant Motion, the Court may properly consider the affidavits attached to Plaintiff's opposition papers. *See Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) ("On a motion to dismiss, the Court can consider documents that a pro se litigant attaches to his opposition papers." (italics omitted)).

Leake & Watts, Biondi, and the named employees are "an arm of the State" that should be "deemed State actors" for purposes of his § 1983 and Title VI claims. (Pl.'s Sur-Reply to Defs.' Mot. to Dismiss ("Pl.'s Sur-Reply") at unnumbered 1 (Dkt. No. 67).)

The events giving rise to these claims trace back to December 2011, when Plaintiff launched "a union organizing campaign" for workers employed by Leake & Watts. (Pl.'s Opp'n Ex. A ("Aff. of Julie Berman") ¶ 3.) He took "a leading role" in these efforts, "trying to overcome the chilling effects of [Leake & Watts'] union-busting campaign." (*Id.* ¶¶ 11, 13.) As a result, Plaintiff "started having problems with the administration" and "was really being single[d] out." (Pl.'s Opp'n Ex. E ("Aff. of Perry Kelly") at unnumbered 1.) He was forced to relocate his office, (*see id.*; Compl. at unnumbered 11), and "was consistently reassigned job duties," (Pl.'s Opp'n Ex. I ("Aff. of Windell Whitett") at unnumbered 1).

In May 2012, Plaintiff was involved in an "alleged assault incident" with a student and then "suspended immediately" by the school. (Compl. at unnumbered 12; *see also* Pl.'s Opp'n Ex. J ("Aff. of Kenneth M. Stevens") at unnumbered 1.) Shortly thereafter on May 14, 2012, Leake & Watts, "without conducting a full investigation," and in violation of "their own policies and regulations," (Compl. at unnumbered 8, 14), "informed him that he was being terminated," (Aff. of Julie Berman ¶ 14).

Plaintiff thus contends that Defendants violated his constitutional rights, (*see* Compl. at unnumbered 1), and unlawfully discriminated against him, in violation of Title VI, (*see* Pl.'s Opp'n at unnumbered 4–6). Specifically, the Fifth Amended Complaint alleges that Mucatel, Chief Executive Officer of Leake & Watts, "ordered his subordinates to undermine any and every effort made by [P]laintiff . . . to organize a union at [Biondi]," while Biondi Superintendent Antonecchia "conspired with all other [D]efendants to stop [P]laintiff from

forming a union." (Compl. at unnumbered 10.)  St. John, an administrative assistant at Biondi, allegedly "issu[ed] confidential information regarding [P]laintiff's background . . . for retaliatory purposes" in response to "[P]laintiff's union forming activities." (*Id.* at unnumbered 11.)  The Fifth Amended Complaint further alleges that Support Supervisor Causwell, Assistant Principle Grimes, and Principal Cancro "fail[ed] to give [P]laintiff his Due Process [r]ights" prior to his termination resulting from "the alleged assault incident." (*Id.* at unnumbered 12–13.)

    B.  Procedural Background

On April 8, 2013, Plaintiff commenced this Action against Mucatel, Antonecchia, St. John, Causwell, Grimes and Cancro, (Dkt. No. 2), filing an Amended Complaint four days later, (Dkt. No. 4).  On September 12, 2013, Plaintiff filed a Second Amended Complaint, adding Leake & Watts and Biondi as Defendants.  (Dkt. No. 9.)  On November 15, 2013, he filed a Third Amended Complaint against all Defendants named in his Second Amended Complaint. (Dkt. No. 11.)  Plaintiff then filed a Fourth Amended Complaint on October 7, 2014.  (Dkt. No. 45.)

Ultimately, Plaintiff filed this Fifth Amended Complaint on January 8, 2015, alleging that Defendants "depriv[ed] Plaintiff of those rights secured under the Constitution and laws of the United States" by "taking adverse employment actions against him in retaliation for his protected speech." (Compl. at unnumbered 1.)  Defendants filed their Motion To Dismiss and supporting papers on March 9, 2015.  (Dkt. Nos. 54–57.)  Plaintiff filed opposition papers on April 15, 2015, now additionally alleging that Defendants "adopted discriminatory and retaliatory tactics" in response to his "attempt[s] to exercise his constitutional rights to form a union," allegedly in violation of Title VI.  (Pl.'s Opp'n at unnumbered 5.)  Defendants filed a reply on April 29, 2015, (Dkt. No. 62), and Plaintiff filed a sur-reply on June 22, 2015, (Dkt. No. 67).

II.  Discussion

A.  Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations, citations, and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alterations and internal quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

5

hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In addition, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Dixon v. United States*, No. 13-CV-2193, 2014 WL 23427, at *1 (S.D.N.Y. Jan. 2, 2014) (report and recommendation) ("For the purpose of this motion to dismiss, we assume that the facts alleged in [the plaintiff's] complaint are true."). Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of N.Y.*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his or her] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015). In deciding a motion to dismiss a pro se complaint, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the

complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6; *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion"). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks removed)).

  B.  Plaintiff's § 1983 Claims

  The Fifth Amended Complaint puts forth only a single cause of action, which is brought pursuant to 42 U.S.C. § 1983. (*See* Compl. at unnumbered 1.) Under that federal provision:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The Supreme Court has explained that "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). In applying § 1983 to private conduct (regardless of its severity), the Supreme Court has sought to "'preserve[] an area of individual freedom by limiting the reach of federal law' and avoid[] the imposition of responsibility on a State for conduct it could not control." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (quoting *Lugar*

7

*v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action."  *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003).  To constitute state action, there must be an alleged deprivation of a federal right "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor."  *Lugar*, 457 U.S. at 937; *see also Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010) (referring to and applying the "two prong" test outlined in *Lugar*).

"Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action." *Rendell-Baker v. Kohn*, 457 U.S. 830, 847 (1982) (some internal quotation marks omitted); *see also Hollander*, 624 F.3d at 34 (recognizing "actions of nominally private entities are attributable to the state" under certain circumstances).  A private entity, however, does not become a state actor for purposes of § 1983 merely on the basis of "the private entity's creation, funding, licensing, or regulation by the government."  *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003).  "Rather, there must be such a close nexus between the state and the challenged action that the state is *responsible* for the specific conduct of which the plaintiff complains."  *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (brackets and internal quotation marks omitted)).  Similarly, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).  To establish that a private actor's conduct is to be deemed state action, a § 1983 plaintiff must demonstrate that the State was involved in the specific activity giving rise to his or her cause of action; it is not enough to show merely that the State was involved in "some

activity" of the private entity "alleged to have inflicted injury upon [the] plaintiff." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257–58 (2d Cir. 2008) (citation, emphasis, and internal quotation marks omitted).

Although there is "no single test to identify state actions and state actors," *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) (internal quotation marks omitted), three main tests have emerged:

> For the purposes of [§] 1983, the actions of a nominally private entity are attributable to the state . . . (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Sybalski*, 546 F.3d at 257 (alterations and some internal quotation marks omitted); s*ee also Hollander*, 624 F.3d at 34 (same).

Here, despite his contention that "[D]efendants['] conduct in terminating [him] is fairly attributable to the State," (Compl. at unnumbered 3), Plaintiff cannot establish that Defendants' termination decision is attributable to the State under any of these three tests.

1.  The Compulsion Test

According to the Fifth Amended Complaint, Leake & Watts is "heavily regulated and closely supervised by the State" such that its "freedom of decision making is substantially circumscribed by [New York State ("NYS")] Department of Education's guidelines and the various contracts with state agencies." (Compl. at unnumbered 7–8; *cf.* Defs.' Mem. Of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") 3 (Dkt. No. 57) ("As a state[-]funded agency receiving a substantial amount of funding, Leake [&] Watts, including Biondi, are subject to varying requirements from the State." ).)  Plaintiff specifically contends that these regulations

9

"require that the school maintain written job descriptions and a written policy on criteria and procedures for hiring and dismissal" of its employees.  (Compl. at unnumbered 6.)

"Even extensive regulation by the government does not transform the actions of the regulated entity into those of the government." *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 544 (1987); *see also Gilinsky v. Columbia Univ.*, 488 F. Supp. 1309, 1312 (S.D.N.Y. 1980) ("[M]erely being subject to the laws of the State or the United States is clearly insufficient to show that action in violation of those laws is state action."), *aff'd*, 652 F.2d 53 (2d Cir. 1981).  Instead, the state's regulation must actually "evidence governmental coercion or encouragement" over the particular activity that allegedly caused the constitutional injury. *Hamlin ex rel. Hamlin v. City of Peekskill Bd. of Educ.*, 377 F. Supp. 2d 379, 388 (S.D.N.Y. 2005) (internal quotation marks omitted) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Sybalski*, 546 F.3d at 257–58 ("[T]he plaintiff must allege that the state was involved with the *activity that caused the injury* giving rise to the action." (internal quotation marks and citation omitted) (emphasis in original)); *Powe v. Miles*, 407 F.2d 73, 81 (2d Cir. 1968) ("[T]he state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with *the* activity that caused the injury.  Putting the point another way, the state action, not the private action, must be the subject of complaint." (emphasis added)).  A private entity, in other words, is not "a state actor where its conduct is not compelled by the state but is merely permitted by state law." *Cranley*, 318 F.3d at 112; *see also Hamlin*, 377 F. Supp. 2d at 388–89 (reaffirming there must be "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may fairly be treated as that of the State itself" (citation and internal quotation marks omitted)).

The Fifth Amended Complaint offers no specific allegation that Defendants are regulated by the State in the school's personnel matters, including employment termination. *See Iqbal*, 556 U.S. at 678 (reaffirming that facts merely consistent with a defendant's liability "stop[ ] short of the line between possibility and plausibility of entitlement to relief" (internal quotation marks omitted)). Plaintiff broadly alleges that the "private" school's "hiring decision making process is regulated, mandated, and religiously enforced by the State of New York." (Pl.'s Opp'n at unnumbered 3.) The Fifth Amended Complaint, however, provides no details surrounding this alleged compulsion. Indeed, Plaintiff himself acknowledges that "[D]efendants have . . . their own policies and regulations." (Compl. at unnumbered 14.) Regardless, in contrast to the generally extensive regulation of schools like Biondi, the NYS Department of Education's guidelines show relatively little interest in the personnel matters of the schools they regulate. (*See generally* Defs.' Mem. Ex. B ("Guidelines") § 126.6.).[2] Even among the provisions relating to personnel, these regulations focus exclusively on the requirements "for teachers and directors," making no mention of other school staff. (*Id.* § 126.6(a)). Moreover, the only references to "dismissal or termination" throughout the entirety of the Guidelines pertain to *students*, again making no mention of school staff. (*Id.* § 126.7(d)(5); *see also id.* §§ 126.4(e)(2), 126.9(a)(6)–(7), 126.17(a)(6)). Plaintiff thus offers nothing in support of his § 1983 claims that links the state regulation of personnel matters and his termination, much less provides plausible

---

[2] The Court may properly consider the Guidelines as "incorporated in the complaint by reference" for purposes of resolving the instant Motion, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include any . . . documents incorporated in it by reference." (internal quotation marks omitted)); *Leonard F.*, 199 F.3d at 107, but these regulations are also a matter of which judicial notice may be taken, *see United States v. Knauer*, 635 F. Supp. 2d 203, 206 n.2 (E.D.N.Y. 2009) (noting "courts may take judicial notice of the rules and regulations of an administrative agency"); *cf. Anglisano v. N.Y.C. Dep't of Educ.*, No. 14-CV-3677, 2015 WL 5821786, at *7 (E.D.N.Y. Sept. 30, 2015) (noting the court's ability to take judicial notice of Department of Education regulations).

claims that the State "fostered or encouraged" Defendants' decision to terminate his employment based on his union-organizing activities. *Hamlin*, 377 F. Supp. 2d at 389 (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)); *see also Rendell-Baker*, 457 U.S. at 841 (finding termination of petitioners' employment by private school did not constitute state action where "the decisions to discharge the petitioners were not compelled or even influenced by any state regulation," and noting that "in contrast to the extensive regulation of the school generally, the various regulators showed relatively little interest in the school's personnel matters"); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) (finding medical provider for persons in custody was a state actor with respect to medical services but not its employment decisions).

More to the point, Plaintiff himself offers nothing to suggest that Defendants' termination decision was compelled or even influenced by any state regulation. *Cf. Brentwood*, 531 U.S. at 296 (discussing another case where the defendant "could fairly be said to act under the compulsion of the state" because it "was created pursuant to a federal law to achieve governmental objectives, and the government retains authority to appoint the majority of [the entity's] directors"). [3] Certainly, Plaintiff offers no claim that the state's regulations encouraged, let alone tolerated, termination of employees because of union-organizing activities. Yet, it is Plaintiff's allegedly wrongful termination based on such activities that is the precise "activity of the institution" at issue in the instant Action. *See Powe*, 407 F.2d at 81. Put another way, the gravamen of Plaintiff's claims deals not with Defendants' performance of educational services

---

[3] Though not a point of disagreement between the Parties, it is worth noting that the individual Defendants were, at all relevant times, employed by Leake & Watts, *not* by the State. (*See, e.g.*, Defs.' Mem. 4; Compl. at unnumbered 10–13.) This distinction further reinforces that Plaintiff cannot establish state involvement to meet the compulsion test. *See Lowe v. Astor Servs. for Children & Families*, No. 11-CV-389, 2011 WL 5142664, at *4 (S.D.N.Y. Sept. 29, 2011) (finding the plaintiff could not sustain a cause of action under § 1983 in part because no federal, state, or local official played any role in the employment decision at issue), *aff'd sub nom. Faddis-DeCerbo v. Astor Servs. for Children & Families,* 500 F. App'x 46 (2d Cir. 2012).

but instead with their "activity" in terminating Plaintiff's employment. *See Sherlock*, 84 F.3d at 527 ("The fact that a municipality is responsible for providing medical attention to persons held in its custody may make an independent contractor rendering such services a state actor within the meaning of § 1983 with respect to the services so provided, but that fact does not make the contractor a state actor with respect to its employment decisions." (citations omitted)); *DD v. Lincoln Hall*, No. 09-CV-860, 2010 WL 695027, at *12 (S.D.N.Y. Feb. 19, 2010) ("[E]mployment decisions, even by employers who may be state actors in other contexts, do not constitute state action absent a showing that there was a nexus between the challenged actions and the state."). There is simply no intersection between state regulations and the actionable conduct by the private actors, let alone compulsion of the latter by the former. *See Colabella v. Am. Inst. of Certified Pub. Accountants*, No. 10-CV-2291, 2011 WL 4532132, at *11 (E.D.N.Y. Sept. 28, 2011) (concluding the complaint failed to satisfy the compulsion test where the "[p]laintiffs do not allege that [the defendants] act[ed] under the coercion or influence of the state, or that the state influenced or compelled defendants to suspend [the plaintiff]").

    2. The Joint Action Test

 Plaintiff fairs no better under the joint action test, notwithstanding Plaintiff's dramatic declaration that "[t]he school's very survival depends on the State." (Compl. at unnumbered 7.) In seeking to establish state action on the basis of "a symbiotic relationship between the State and [Defendants]," the Fifth Amended Complaint emphasizes that Defendants "receive virtually all of [their] funds from state sources." (*Id.*) Defendants themselves readily recognize the school is "a state[-]funded agency receiving a substantial amount of funding," (Defs.' Mem. 3), for the law is well-settled that the receipt of extensive governmental funding is insufficient to subject a private entity to liability under § 1983, *see Rendell-Baker*, 457 U.S. at 832–33, 843

(rejecting "state action" argument for employment terminations effected by a private school that (1) received 90-99% of its funding from the State; (2) was subject to state regulation; and (3) contracted with the State to perform certain services for students); *Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07-CV-11316, 2008 WL 3861352, at *8 (S.D.N.Y. Aug. 19, 2008) ("[A] predominance of public funding is not conclusive evidence of state action."); *Lynn ex rel. Julie B. v. St. Anne Inst.*, No. 03-CV-1333, 2006 WL 516796, at *15 (N.D.N.Y. Mar. 2, 2006) ("The facts that [the defendant school] receives funding from the State of New York or that a significant portion (if not all) of [its] clientele comes through state actors . . . does not transform it into a state actor." (citing *Rendell-Baker*, 457 U.S. at 841)). Rather, to satisfy the joint action test, Plaintiff must show that this financial support specifically affected the decision to terminate his employment. *See Horvath v. Westport Library Ass'n*, 362 F.3d 147, 152 (2d Cir. 2004) (explaining that "[t]he decisive factor in the [*Rendell-Baker*] Court's view was that the school's personnel decisions were uninfluenced by public officials"); *cf. Moglia v. Sullivan Cty. Head Start*, 988 F. Supp. 366, 367 (S.D.N.Y. 1997) (finding that defendant's personnel decisions were not state action, despite extensive federal funding and regulation), *aff'd* 159 F.3d 1347 (2d Cir. 1998). In the instant Action, Plaintiff merely alleges that Defendants are "funded almost entirely by governmental agencies" and that the State "bear[s] all the expenses associated with the placement" of students at the school. (Compl. at unnumbered 5.) These allegations do not suffice under the joint action test. As established by Supreme Court and Second Circuit precedent, the fact that Leake & Watts and Biondi receive substantial financial support from the State does not render them, or their employees, state actors. *See, e.g.*, *Rendell-Baker*, 457 U.S. at 841 ("[T]he relationship between the school and its [employees] is not changed because the State pays the tuition of the students."); *Fabrikant*, 691 F.3d at 207 ("[A] private entity does not

become a state actor for purposes of § 1983 merely on the basis of the private entity's creation, funding, licensing, or regulation by the government." (internal quotation marks omitted)); *Scaggs v. N.Y. Dep't of Educ.*, No. 06-CV-799, 2007 WL 1456221, at *13 (E.D.N.Y. May 16, 2007) (deeming school to be a state actor where "the claims relate to the alleged total inadequacy of a school to provide free public education to its students while receiving state funding," not to "an employment action with regard to a single teacher, in which it may fairly be said that the state could be only minimally or tangentially involved").

In a further attempt to establish state involvement, Plaintiff contends that "[t]he State and this privately owned enterprise are participants in a joint venture, the educating of New York State students with learning disabilities." (Compl. at unnumbered 7.)  However, the mere fact that Defendants and the State both "provide educational services," (Defs.' Mem. 2), cannot "be said to make the State in any realistic sense a partner or even a joint venturer in [Defendants'] enterprise," *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 176–77 (1972).  The Fifth Amended Complaint offers no allegation that Defendants were "willingly engaged in joint action with the government." *Hamlin*, 377 F. Supp. 2d at 386 (internal quotation marks omitted).  In fact, it appears that the relationship between the state and Defendants was purely contractual.  (*See, e.g.*, Compl. at unnumbered 6 ("Under the contract, [Defendants] must carry out the educational plan devised by the NYS [Department] of Education for each student placed with the school."); Guidelines §126.10 (i)(l) ("The commissioner shall consult with the governmental agency or authority which operates, licenses, regulates, approves[,] or contracts with such a school.").) Despite Plaintiff's allegation that "if the State had decided to provide the service itself, its conduct would be measured against constitutional standards," (Compl. at unnumbered 8), acts of private contractors who provide services with government financing "do not become acts of the

government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker*, 457 U.S. at 841.

### 3.  The Public Function Test

Lastly, Plaintiff's claims also fail under the public function test because Defendants do not perform a function that is "traditionally the exclusive prerogative of the state." *Rendell-Baker*, 457 U.S. at 842 (emphasis omitted).  Defendants educate "maladjusted high school students" at public expense, and there is no doubt that this function serves the public, (Pl.'s Opp'n at unnumbered 3), but the mere fact that a private entity performs a function that serves the public does not render its acts under color of state law for purposes of a § 1983 cause of action, *see Rendell-Baker*, 457 U.S. at 842 ("There can be no doubt that the education of maladjusted high school students is a public function, but that is only the beginning of the inquiry . . . .  That a private entity performs a function which serves the public does not make its acts state action.").  Under this third test, private entities can be deemed state actors *only* if they perform a public function that is within the State's "exclusive prerogative."  *Id.*; *see also Phelan ex rel. Phelan v. Torres,* 843 F. Supp. 2d 259, 273 (E.D.N.Y. 2011) ("The fact that the state may contract with a private party to perform a function does not [necessarily] transform the private party into a state actor . . . ."), *aff'd* 512 F. App'x 88 (2d Cir. 2013).  Notwithstanding the importance of public education, courts have consistently held that "education is not considered to be exclusively the prerogative of the State."  *Hamlin*, 377 F. Supp. 2d at 386; *see also Powe*, 407 F.2d at 80 ("Education has never been a state monopoly in this country . . . ."); *accord Logiodice v. Tr. of Me. Centr. Inst.*, 296 F.3d 22, 26–27 (1st Cir. 2002) ("Obviously, education is not and never has been a function reserved to the state . . . .  [S]chooling . . . is regularly and widely performed by private entities . . . ."); *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 162, 165–66

(3d Cir. 2001) (holding that a private school specializing in treatment and education of juvenile sex offenders was not providing a function that is traditionally the exclusive province of the State).

Because Plaintiff has failed to plausibly plead that Defendants were acting under color of state law in terminating his employment, his § 1983 claim cannot survive. Accordingly, the Court grants Defendants' Motion as to this cause of action.

C.  Plaintiff's Title VI Claims

In his opposition papers, Plaintiff alleges for the first time that "[D]efendants engaged in intentional discrimination" in violation of Title VI. (Pl.'s Opp'n at unnumbered 6.)[4]

Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim for a violation of Title VI, "a plaintiff must show, through specific factual allegations, that (1) the defendant discriminated on a prohibited basis; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendant's action." *HB v. Monroe Woodbury Cent. Sch. Dist.,* No. 11-CV-5881, 2012 WL 4477552, at *14 (S.D.N.Y. Sept. 27, 2012) (citations and internal quotation marks omitted).

However, Plaintiff offers absolutely no allegations concerning discrimination on a prohibited basis recognized as actionable under Title VI. Neither the Fifth Amended Complaint nor Plaintiff's opposition papers make *any* mention of Plaintiff's race, color, or national origin. *See McCrudden v. E-Trade Fin. Corp.*, No. 13-CV-8837, 2014 WL 3952903, at *3–4 (S.D.N.Y.

---

[4] Though no claim under Title VI was included in the Fifth Amended Complaint, (*see* Compl. 15–17; *see also* Defs.' Reply Mem. Of Law in Supp. of Mot. to Dismiss ("Defs.' Reply") 1 (Dkt. No. 62)), the Court considers the allegations of Plaintiff's opposition papers, given his status as a pro se litigant, *see Walker*, 717 F.3d at 122 n.1.

Aug. 12, 2014) (dismissing claim under Title VI where plaintiff "does not allege his race, color, or national origin" and "does not allege which of these was the basis of the [d]efendants' 'discrimination'"). Construed liberally, Plaintiff's Opposition instead grounds his claim for intentional discrimination on the "discriminatory and retaliatory tactics" allegedly used by Defendants in response to Plaintiff's "attempt[] to exercise his constitutional right to form a union." (Pl.'s Opp'n at unnumbered 5.) Union activity, however, is not a class protected under Title VI. *See* 42 U.S.C. § 2000d (prohibiting discrimination "on the ground of race, color, or national origin"); *accord Joy v. Daniels*, 479 F.2d 1236, 1241 (4th Cir. 1973) (describing the purpose of Title VI as protecting a "person's right to be free of invidious discrimination in federally assisted programs").[5]

Plaintiff, moreover, does not suggest any reason to believe he was discriminated against on the basis of race, color, or national origin. As such, his Title VI claim is dismissed. *See Melgarejo v. N.Y. Coll. of Podiatric Med.*, No. 12-CV-6669, 2014 WL 1683809, at *6–7 (S.D.N.Y. Apr. 28, 2014) (rejecting Title VI claims as a matter of law where the plaintiff "failed to put forth either direct evidence of discrimination or indirect evidence sufficient to make out a prima facie case of discrimination"), *aff'd*, 601 F. App'x 61 (2d Cir. 2015); *Faccio v. Eggleston*, No. 10-CV-699, 2011 WL 3666588, at *10 (N.D.N.Y. Aug. 22, 2011) (dismissing Title VI claim where the plaintiffs failed to identify "any incidents where employees or students at the middle school discriminated against any student . . . due to race, ethnicity, or gender").

---

[5] While the Court certainly does not condone the suppression of labor organizing efforts, the law clearly limits causes of action under Title VI to discrimination based only on "race, color, or national origin." 42 U.S.C. § 2000d. Union activity "is a protected activity" under *certain* federal and state laws, (*see* Compl. at unnumbered 4), but it is not a recognized basis for claims under this particular statute. Plaintiff may want to consider whether his claims are viable under those federal and state laws.

### III. Conclusion

In light of the foregoing analysis, the Court dismisses Plaintiff's Fifth Amended Complaint without prejudice. Within 30 days from the date of this Opinion, Plaintiff may have one final opportunity to amend his complaint, addressing the deficiencies identified herein. The Clerk of the Court is respectfully requested to terminate the pending Motion. (Dkt. No. 54.)

SO ORDERED.

DATED:   February 10, 2016
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE