UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD DAWKINS,

Plaintiff,

v.

BIONDI EDUCATION CENTER, LEAKE & WATTS SERVICES, ALLAN MUCATEL, ALPHONSO GRIMES, DONALD ANTONECCHIA, GEORGE CANCRO, JILL ST. JOHN, and RALPH CAUSWELL,

Defendants.

No. 13-CV-2366 (KMK)

OPINION & ORDER

Appearances:

Donald Dawkins
Middletown, NY
*Pro Se Plaintiff*

Isaac J. Burker, Esq.
Susan M. Corcoran, Esq.
Tarek M. Maheran, Esq.
Jackson Lewis P.C.
White Plains, NY
*Counsel for Defendants*

Joseph J. DiPalma, Esq.
Ingerman Smith, LLP
Harrison, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Pro se Plaintiff Donald Dawkins ("Plaintiff") filed the instant Sixth Amended Complaint naming as Defendants the Biondi Education Center ("Biondi"), Leake & Watts Services ("L&W"), and their employees, Allan Mucatel ("Mucatel"), Alphonso Grimes ("Grimes"), Donald Antonecchia ("Antonecchia"), George Cancro ("Cancro"), Jill St. John ("St. John"), and

Ralph Causwell ("Causwell," and collectively, "Defendants"), alleging violations of his rights under the First, Fifth, and Fourteenth Amendments of the Constitution. (*See generally* Sixth Am. Compl. ("SAC") (Dkt. No. 71).) Before the Court is Defendants' Motion To Dismiss Plaintiff's Sixth Amended Complaint (the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 75.) In response to Defendants' Motion, Plaintiff further alleges that Defendants violated the New York Labor Law ("NYLL"), the Fair Labor Standards Act ("FLSA"), and engaged in fraudulent behavior, (Pl.'s Sur-Reply in Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Sur-Reply") (Dkt. No. 82)), and seeks permission from the Court to file a Seventh Amended Complaint. For the reasons explained herein, Defendants' Motion is granted and Plaintiff's request to file a Seventh Amended Complaint is denied.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Sixth Amended Complaint and documents attached to Plaintiff's opposition papers, which the Court takes as true for the purpose of resolving the instant Motion.[1]

Plaintiff worked for L&W from 2001 until 2012. (Pl.'s Opp'n to Defs.' Mot. To Dismiss the Fifth Am. Compl. ("Pl.'s FAC Opp'n") Ex. D ("Aff. of James Faulkner, Jr.") at unnumbered

[1] Though courts are "typically confined to the allegations contained within the four corners of the complaint," it is appropriate to "consider factual allegations contained in a pro se litigant's opposition papers and other court filings" in "analyzing the sufficiency of a pro se pleading." *Rodriguez v. Rodriguez*, No. 10-CV-891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) (internal quotation marks omitted). Therefore, in deciding the instant Motion, the Court may properly consider the affidavits attached to Plaintiff's papers filed in opposition to Defendants' Motion To Dismiss the *Fifth* Amended Complaint. *See Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) ("On a motion to dismiss, the Court can consider documents that a pro se litigant attaches to his opposition papers." (italics omitted)). Plaintiff did not refile those documents in opposition to the instant Motion.

1 (Dkt. No. 60).) During that period, he held a non-teaching position at Biondi. (*See* SAC at 4; Aff. of James Faulkner, Jr., at unnumbered 1.)[2] "[C]ontrolled and owned by [L&W]," Biondi, "[f]or all practical purposes," is "a public high school with private status" that provides educational services to students with special needs. (SAC at 2, 4, 10.) As such, it is "heavily regulated" by New York State ("NYS") and receives "almost all of its funds from the State." (*Id.* at 4.) In fiscal year 2012, public funds accounted for 91% of Biondi's budget. (*Id.* at 6.) To receive these funds, Biondi had to "comply with a variety of regulations" promulgated by the NYS Department of Education. (*Id.*) The regulations cover everything from financial record keeping to personnel matters. (*Id.*) For example, schools receiving public funds must maintain written job descriptions and a written policy on criteria and procedures for hiring and dismissal. (*Id.*) Plaintiff alleges that if NYS chooses, it may exercise complete control over Biondi's operations simply by threatening to withdraw financial support if Biondi takes action it considers objectionable. (*Id.* at 8.) For these reasons, Plaintiff contends that the actions of L&W, Biondi, and the individually named Defendants should be "attributed to the State." (*Id.*)

The events giving rise to Plaintiff's claims trace back to December 2011, when Plaintiff launched "a union organizing campaign" for workers employed by L&W. (Pl.'s FAC Opp'n Ex. A ("Aff. of Julie Berman") ¶ 3.) He took "a leading role" in these efforts, "trying to overcome the chilling effects of L&W's intense union-busting campaign." (*Id.* ¶¶ 11, 13.) As a result, Plaintiff "started having problems with the administration" and "was really being single[d] out." (Pl.'s FAC Opp'n Ex. E ("Aff. of Perry Kelly") at unnumbered 1.) He was forced to relocate his

---

[2] When citing to the Sixth Amended Complaint, the Court refers to the page numbers found at the bottom of the page.

office, (*see id.*), and "was consistently reassigned job duties," (Pl.'s FAC Opp'n Ex. I ("Aff. of Windell Whitett") at unnumbered 1).

In May 2012, Plaintiff was accused of assaulting a student, and was "suspended immediately." (SAC 4, 13; *see also* Pl.'s FAC Opp'n Ex. J ("Aff. of Kenneth M. Stevens") at unnumbered 1.) Shortly thereafter on May 14, 2012, L&W fired Plaintiff, (Aff. of Julie Berman ¶ 14), without conducting "a full and investigative internal hearing," and in violation of its "own policies and regulations," (SAC at 4, 14).

Plaintiff thus contends that Defendants violated his constitutional rights. (*See id.* at 1.) Specifically, the Sixth Amended Complaint alleges that Mucatel, Chief Executive Officer of L&W, "ordered his subordinates to undermine any and every effort made by [P]laintiff . . . to organize a union at [Biondi]," while Biondi Superintendent Antonecchia "conspired with all other [D]efendants to stop [P]laintiff from forming a union." (*Id.* at 11.) St. John, an administrative assistant at Biondi, allegedly "issu[ed] confidential information regarding [P]laintiff's background . . . for retaliatory purposes" in response to "[P]laintiff's union forming activities." (*Id.* at 12.) The Sixth Amended Complaint further alleges that Support Supervisor Causwell, Assistant Principle Grimes, and Principal Cancro "fail[ed] to give [P]laintiff his Due Process [r]ights" prior to his termination resulting from "the alleged assault incident." (*Id.* at 12–13.)

B. Procedural Background

On April 8, 2013, Plaintiff commenced this Action against Mucatel, Antonecchia, St. John, Causwell, Grimes, and Cancro, (Dkt. No. 2), filing an Amended Complaint four days later, (Dkt. No. 4). On September 12, 2013, Plaintiff filed a Second Amended Complaint, adding L&W and Biondi as Defendants. (Dkt. No. 9.) On November 15, 2013, he filed a Third

Amended Complaint against all Defendants named in his Second Amended Complaint. (Dkt. No. 11.) Plaintiff then filed a Fourth Amended Complaint on October 7, 2014. (Dkt. No. 45.)

Plaintiff subsequently filed a Fifth Amended Complaint in January 2015, alleging that Defendants "depriv[ed] [him] of those rights secured under the Constitution and laws of the United States" by "taking adverse employment actions against him in retaliation for his protected speech." (Fifth Am. Compl. at unnumbered 1 (Dkt. No. 49).) Defendants filed a Motion To Dismiss the Fifth Amended Complaint in March 2015. (Dkt. No. 54.) The Court granted that motion, but allowed Plaintiff 30 days to file a Sixth Amended Complaint remedying the deficiencies identified by the Court. (Opinion & Order (Dkt. No. 69).)

Plaintiff filed the instant Sixth Amended Complaint on April 4, 2016. (Dkt. No. 71.) Defendants filed their Motion and supporting papers on May 19, 2016. (Dkt. Nos. 75–77.) Plaintiff filed his opposition on June 20, 2016, conceding that he could not state a § 1983 claim and requesting an opportunity to file a Seventh Amended Complaint alleging negligence. (Pl.'s Opp'n to Defs.' Mot. To Dismiss the SAC ("Pl.'s SAC Opp'n") at unnumbered 2 (Dkt. No 78).) Defendants filed a reply on July 7, 2016, (Dkt. No. 79), and Plaintiff filed a sur-reply on August 4, 2016, (Dkt. No. 82).

## II. Discussion

### A. Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations, citations, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alterations and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In addition, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir. 2012)). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to

facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of New York*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his or her] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015). In deciding a motion to dismiss a pro se complaint, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6; *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion"). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B. Plaintiff's § 1983 Claims

The Sixth Amended Complaint puts forth only a single cause of action, which is brought pursuant to 42 U.S.C. § 1983. (*See* SAC at 1.) Under that provision:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The Supreme Court has explained that "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). In applying § 1983 to private conduct (regardless of its severity), the Supreme Court has sought to "'preserve[] an area of individual freedom by limiting the reach of federal law' and avoid[] the imposition of responsibility on a State for conduct it could not control." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982)). "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). To constitute state action, there must be an alleged deprivation of a federal right "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937; *see also Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010) (per curiam) (referring to and applying the "two-prong test" outlined in *Lugar*).

"Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character" that it can be regarded as governmental action. *Evans v. Newton*, 382 U.S. 296, 299 (1966); *see also Hollander*, 624 F.3d at 34 (recognizing "actions of nominally private entities are attributable to the state" under certain circumstances). A private entity, however, does not become a state actor for purposes of § 1983 merely on the basis of "the private entity's creation, funding, licensing, or regulation by the government." *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003). "Rather, there must be such a close nexus between the state and the challenged action that the state is *responsible* for the specific conduct of which the plaintiff complains." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (alteration and internal quotation marks omitted). Similarly, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). To establish that a private actor's conduct is to be deemed state action, a § 1983 plaintiff must demonstrate that the state was involved in the specific activity giving rise to his or her cause of action; it is not enough to show merely that the state was involved in "some activity" of the private entity "alleged to have inflicted injury upon [the] plaintiff." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (emphasis and internal quotation marks omitted).

Although there is "no single test to identify state actions and state actors," *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) (internal quotation marks omitted), three main tests have emerged:

> For the purposes of [§] 1983, the actions of a nominally private entity are attributable to the state . . . (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the

> entity has been delegated a public function by the state, ("the public function test").

*Sybalski*, 546 F.3d at 257 (alterations and some internal quotation marks omitted); *see also Hollander*, 624 F.3d at 34 (same).

Here, Plaintiff cannot establish that Defendants' termination decision is state action under any of these three tests.

1. The Compulsion Test

According to the Sixth Amended Complaint, Biondi is "heavily regulated" and must comply with a variety of regulations promulgated by the NYS Department of Education, (SAC at 4, 6), such that its "freedom of decision making is substantially circumscribed," (*id.* at 8). Plaintiff specifically contends that these regulations "require that [Biondi] maintain written job descriptions and a written policy on criteria and procedures for hiring and dismissal" of its employees. (*Id.* at 6.)

"Even extensive regulation by the government does not transform the actions of the regulated entity into those of the government." *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 544 (1987); *see also Gilinsky v. Columbia Univ.*, 488 F. Supp. 1309, 1312 (S.D.N.Y. 1980) ("[M]erely being subject to the laws of the State or the United States is clearly insufficient to show that action in violation of those laws is state action."), *aff'd*, 652 F.2d 53 (2d Cir. 1981). Instead, the state's regulation must actually "evidence governmental coercion or encouragement" over the particular activity that allegedly caused the constitutional injury. *Hamlin ex rel. Hamlin v. City of Peekskill Bd. of Educ.*, 377 F. Supp. 2d 379, 388 (S.D.N.Y. 2005) (internal quotation marks omitted) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Sybalski*, 546 F.3d at 257–58 ("[T]he plaintiff must allege that the state was involved with the *activity that caused the injury* giving rise to the

action." (internal quotation marks omitted)); *Powe v. Miles*, 407 F.2d 73, 81 (2d Cir. 1968) ("[T]he state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with *the* activity that caused the injury. Putting the point another way, the state action, not the private action, must be the subject of complaint." (emphasis added)). A private entity, in other words, is not "a state actor where its conduct is not compelled by the state but is merely permitted by state law." *Cranley*, 318 F.3d at 112; *see also Hamlin*, 377 F. Supp. 2d at 388–89 (reaffirming there must be "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself" (internal quotation marks omitted)).

The Sixth Amended Complaint, like the Fifth Amended Complaint, offers no specific allegation that Defendants are regulated by NYS in Biondi's personnel matters, including employment termination. Plaintiff broadly alleges that Biondi is "compelled to hir[e] all staff in accordance with State [l]aws," (SAC at 3), and that Biondi disregarded the rules and regulations to which it was subject in terminating him, (*id.* at 16), but the Sixth Amended Complaint provides no details surrounding any alleged government compulsion or the role NYS played in Plaintiff's termination. Plaintiff alleges that Biondi and L&W cannot hire "a sexual predator convicted of any sexually related crimes," (*id.* at 10), but provides no link between that prohibition and a school's decision to fire an employee based on alleged student assault. Furthermore, the NYS Department of Education guidelines regarding personnel, cited by Plaintiff, (*see* SAC at 8), focus exclusively on the requirements "for teachers and directors," making no mention of other school staff. (*See* Aff'n of Susan M. Corcoran, Esq., in Supp. of

Mot. To Dismiss the Fifth Am. Compl. Ex. B ("Guidelines") § 126.6(a) (Dkt. No. 55).)[3] Plaintiff thus offers nothing to support his claim that the regulations to which Biondi was subject compelled his termination. *See Hamlin*, 377 F. Supp. 2d at 389 ("The evidence [the] [p]laintiff offers in support of her claim does not even provide proof as to the extent or nature of the state regulation, much less provide evidence that the state regulation 'fostered or encouraged' [the defendant's] conduct."); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) (finding termination of petitioners' employment by private school did not constitute state action where "the decisions to discharge the petitioners were not compelled or even influenced by any state regulation," and noting that "in contrast to the extensive regulation of the school generally, the various regulators showed relatively little interest in the school's personnel matters"); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) (finding medical provider for persons in custody may have been a state actor with respect to medical services but not its employment decisions).[4] Put simply, there is no intersection between the alleged regulations and Plaintiff's termination. *See Colabella v. Am. Inst. of Certified Pub. Accountants*, No. 10-CV-2291, 2011

---

[3] The Court may properly consider the Guidelines as "incorporated in the complaint by reference" for purposes of resolving the instant Motion, *Leonard F.*, 199 F.3d at 107; *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include any . . . documents incorporated in it by reference." (internal quotation marks omitted)), but these regulations are also a matter of which judicial notice may be taken, *see United States v. Knauer*, 635 F. Supp. 2d 203, 206 n.2 (E.D.N.Y. 2009) (noting "courts may take judicial notice of the rules and regulations of an administrative agency"); *cf. Anglisano v. N.Y.C. Dep't of Educ.*, No. 14-CV-3677, 2015 WL 5821786, at *7 (E.D.N.Y. Sept. 30, 2015) (noting the court's ability to take judicial notice of Department of Education regulations).

[4] The Court notes that Plaintiff alleges that the individual Defendants were, at all relevant times, employed by L&W, *not* by NYS. (*See* SAC at 11–13.) This distinction further reinforces that Plaintiff cannot establish state involvement to meet the compulsion test. *See Lowe v. Astor Servs. for Children & Families*, No. 11-CV-389, 2011 WL 5142664, at *4 (S.D.N.Y. Sept. 29, 2011) (finding the plaintiff could not sustain a cause of action under § 1983 in part because no federal, state, or local official played any role in the employment decision at issue), *aff'd sub nom. Faddis-DeCerbo v. Astor Servs. for Children & Families*, 500 F. App'x 46 (2d Cir. 2012).

WL 4532132, at *11 (E.D.N.Y. Sept. 28, 2011) (concluding the complaint failed to satisfy the compulsion test where the "[p]laintiffs d[id] not allege that [the defendants] act[ed] under the coercion or influence of the state, or that the state influenced or compelled [the] defendants to suspend [the plaintiff]").

2. The Joint Action Test

Plaintiff has again failed to plead joint action. Plaintiff alleges that public funds accounted for 91% of Biondi's budget in 2012, (SAC at 6), but it is well-settled that the receipt of extensive governmental funding is insufficient to subject a private entity to liability under § 1983, *see Rendell-Baker*, 457 U.S. at 832–33, 843 (rejecting "state action" argument for employment terminations effected by a private school that (1) received 90-99% of its funding from the state; (2) was subject to state regulation; and (3) contracted with the state to perform certain services for students); *Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07-CV-11316, 2008 WL 3861352, at *8 (S.D.N.Y. Aug. 19, 2008) ("[A] predominance of public funding is not conclusive evidence of state action."). Plaintiff must instead show that this financial support specifically affected the decision to terminate his employment. *See Horvath v. Westport Library Ass'n*, 362 F.3d 147, 152 (2d Cir. 2004) (explaining that "[t]he decisive factor in the [*Rendell-Baker*] Court's view was that the school's personnel decisions were uninfluenced by public officials"); *cf. Moglia v. Sullivan Cty. Head Start, Inc.*, 988 F. Supp. 366, 367 (S.D.N.Y. 1997) (finding that defendant's personnel decisions were not state action, despite extensive federal funding and regulation), *aff'd*, 159 F.3d 1347 (2d Cir. 1998). Plaintiff has not satisfied this requirement because he merely alleges that Biondi receives "virtually all of its funds from state sources," and that if the state chooses "it may exercise complete control over the school's operations simply by threatening to withdraw financial support." (SAC at 8.) These allegations

do not suffice under the joint action test because Plaintiff has not pled that NYS has chosen to exercise that authority. *See Fabrikant*, 691 F.3d at 207 ("[A] private entity does not become a state actor for purposes of § 1983 merely on the basis of the private entity's creation, funding, licensing, or regulation by the government." (internal quotation marks omitted)).

Plaintiff further contends that "[t]he State and [Biondi] are participants in a joint venture, the educating of New York State students with learning disabilities." (SAC at 7.) The mere fact that Defendants and NYS both provide educational services to children with special needs cannot, however, "be said to make the State in any realistic sense a partner or even a joint venturer in [Defendants'] enterprise," *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 177 (1972). The Sixth Amended Complaint offers no allegation that Defendants were "willingly engaged in a joint action with the government." *Hamlin*, 377 F. Supp. 2d at 385 (internal quotation marks omitted). From the face of the Sixth Amended Complaint, it appears that the relationship between NYS and Defendants was purely contractual, (*see, e.g.*, SAC at 8 ("The school's freedom of decision making is substantially circumscribed by the NYS Department of Education's guidelines and the various contracts with state agencies."), which is fatal to Plaintiff's claim because acts of private contractors who provide services with government financing "do not become acts of the government by reason of their significant or even total engagement in performing public contracts," *Rendell-Baker*, 457 U.S. at 841.

3. The Public Function Test

Lastly, Plaintiff has failed to plead that Defendants are engaged in a function that is "traditionally the exclusive prerogative of the State." *Id.* at 842 (emphasis and internal quotation marks omitted). Defendants educate students with special needs at public expense, but the mere fact that a private entity performs a function that serves the public does not render its acts under

color of state law for purposes of a § 1983 cause of action. *See id.* ("There can be no doubt that the education of maladjusted high school students is a public function, but that is only the beginning of the inquiry . . . . That a private entity performs a function which serves the public does not make its acts state action."). Courts have consistently held that "education is not considered to be exclusively the prerogative of the State." *Hamlin*, 377 F. Supp. 2d at 386; *see also Powe*, 407 F.2d at 80 ("Education has never been a state monopoly in this country . . . .").

Because Plaintiff has failed to plausibly plead that Defendants are state actors or were acting under color of state law in terminating his employment, the Court grants Defendants' Motion as to this cause of action.

C. Plaintiff's Other Claims

In a sur-reply, Plaintiff contends that he has alleged a fraud claim and violations of the NYLL and the FLSA. (Pl.'s Sur-Reply at unnumbered 2–3.) The FLSA "sets minimum requirements for wage and overtime payments and prohibits employment for more than a specified number of hours per week without proper overtime compensation." *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 275 (E.D.N.Y. 2014). It further "prohibits discharging an employee for making internal complaints to an employer about violations of the FLSA." *Corpes v. Walsh Constr. Co.*, 130 F. Supp. 3d 638, 639 (D. Conn. 2015). That statute is not relevant here because Plaintiff has not alleged that Defendants failed to pay him overtime wages, failed to pay him a legal wage, or terminated him because he complained of any such failures. Therefore, to the extent that Plaintiff has attempted to raise an FLSA claim, it is dismissed.[5]

[5] Plaintiff alleges that union activity constitutes a protected activity under certain federal and state laws, (SAC at 2), but has failed to identify any law specifically. Even if Plaintiff has alleged that he engaged in an activity protected by the National Labor Relations Act ("NLRA"),

To the extent that Plaintiff intended to state a claim based on common law fraud or the NYLL, those claims are dismissed without prejudice because the Court has dismissed Plaintiff's federal claims. The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *McGugan v. Aldana–Bernier*, No. 11-CV-342, 2012 WL 1514777, at *8 (E.D.N.Y. Apr. 30, 2012) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice."), *aff'd*, 752 F.3d 224 (2d Cir. 2014).

D. Leave to Amend

Plaintiff now seeks permission from the Court to file a Seventh Amended Complaint, alleging negligence, recognizing his inability to plead a § 1983 action. (Pl.'s SAC Opp'n at unnumbered 1–2.) The proposed Seventh Amended Complaint is almost identical to the Sixth Amended Complaint, except that it inserts "negligently" before many of the allegations. (*See generally* Pl.'s SAC Opp'n.)

Leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), but "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or

---

the Court would lack jurisdiction over that claim because the National Labor Relations Board ("NLRB") has exclusive jurisdiction over such claims. *See Fitzgerald v. Signature Flight Support Corp.*, No. 13-CV-4026, 2014 WL 3887217, at *6 (S.D.N.Y. Aug. 5, 2014) (noting that "exclusive jurisdiction over NLRA claims is lodged in the NLRB"). If his claim were premised on state law, the Court, as explained below, would decline to exercise supplemental jurisdiction over that claim.

undue prejudice to the non-moving party." *U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (internal quotation marks omitted). The Court determines that permitting Plaintiff to file a Seventh Amended Complaint would be futile because he has already filed six different complaints over the course of three years and has failed to state a claim each time. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alteration and internal quotation marks omitted)). He cannot at this stage of the litigation shift his theory of recovery. Defendants have already succeeded on two motions brought pursuant to Rule 12(b)(6); they need not file a third. Furthermore, even if the Court were to allow a Seventh Amended Complaint sounding in negligence, the Court would lack jurisdiction to adjudicate that claim because it does not arise under federal law and the Parties are not diverse.

## III. Conclusion

In light of the foregoing analysis, the Court dismisses Plaintiff's Sixth Amended Complaint with prejudice. The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 75), and to close the case.

SO ORDERED.

DATED: January 20, 2017
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE